FILED
CLERK

3:00 pm, Jan 31, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

STRIKER SHEET METAL II CORP.,

       Plaintiff,      **MEMORANDUM OF**
                   **DECISION & ORDER**
    -against-       2:16-cv-05916 (ADS)(AYS)

HARLEYSVILLE INSURANCE COMPANY
OF NEW YORK,

        Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**Churbuck Calabria Jones & Materazo, P.C.**
*Counsel for the Plaintiff*
43A East Barclay Street
Hicksville, NY 11801
   By:  Robert B. Churbuck, Esq., Of Counsel

**Riker Danzig Scherer Hyland & Perretti LLP**
*Counsel for the Defendant*
500 Fifth Avenue, 49th Floor
New York, NY 10110
   By:  Lance J. Kalik, Esq.,
       Peter M. Perkowski, Jr., Esq., Of Counsel

**SPATT, District Judge**:

   On August 29, 2016, plaintiff Striker Sheet Metal II Corp. (the "Plaintiff" or "Striker")

initiated this declaratory judgment action against the defendant, Harleysville Insurance Company

of New York ("Harleysville" or the "Defendant") in the Supreme Court of New York, Nassau

County. Harleysville subsequently removed this action to this Court on October 24, 2016. The

complaint alleges that Harleysville wrongly denied Striker coverage under a general liability

policy for claims arising from an on-the-job injury to one of Striker's employees.  *See* Docket Entry ("DE") 1.

Presently before the Court is a motion for summary judgment filed by the Defendant on July 11, 2017, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56, and a cross-motion for summary judgment filed by the Plaintiff on August 15, 2017, pursuant to FED. R. CIV. P. 56.

For the reasons set forth herein, the Defendant's motion for summary judgment is granted in its entirety and the Plaintiff's motion for summary judgment is denied.

## I.  BACKGROUND

### A.  THE FACTUAL BACKGROUND

#### 1.  The Accident

On November 1, 2011, Striker, a sheet metal contractor, executed a subcontract (the "Subcontract") with Trystate Mechanical, Inc. ("Trystate"), a HVAC contractor, to "furnish all material and labor for a complete sheet metal system" for a construction project at the Public Theater, located at 425 Lafayette Street, New York, NY (the "Construction Site").  Defendant's Local Rule 56.1(a) Statement of Undisputed Facts ("Defendant's 56.1 Statement") ¶ 2.

On January 10, 2012, Striker employee Randal Fiore ("Fiore") allegedly suffered injuries during the course of his employment at the Construction Site.  *Id*. ¶ 3.  In his deposition, Fiore testified that, while delivering HVAC ductwork to the Construction Site, he removed a hand truck from a Striker-owned truck, and helped load the hand truck with the ductwork.  *Id*. ¶ 4.  With the hand truck filled with ductwork, Fiore maneuvered the hand truck to a ramp, and in the process of moving the hand truck up the ramp, Fiore tripped on "construction debris" and fell.  *Id*.  According to two Striker employees who were present, Kevin Spaun and Brian Zeller, as well as an Injury

and Illness Incident Report filed with the Occupational Safety and Health Administration, Fiore was injured as the hand truck was being removed from Striker's truck. *See* DE 15, Ex. B; DE 14, Ex. D at 45:8-46:4; *id*. Ex. E at 50:8-51:13.

On January 11, 2012, Fiore was treated by Dr. Richard Obedian for his alleged back injuries, which he claims were sustained in the incident the previous day. A medical questionnaire which is signed by Fiore asks the undersigned to briefly describe the nature of the work injury. The response to that question was, "[r]emoving a hand cart off of the truck at work and placing it down once I tried to stand up I dropped to my knees uncontrollably with not being able to stand for 5-10 mins at 6:35am Mon morning." DE 14, Ex. C.

**2. The Harleysville Policy & Coverage Disclaimers**

From April 1, 2011 to April 1, 2012, Striker was insured by Harleysville under a commercial general liability policy, specifically number GL00000029124J (the "Harleysville Policy"). *Id*. Ex. F; Defendant's 56.1 Statement ¶ 1. In relevant part, the Harleysville Policy states:

SECTION I - COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false, or fraudulent.

*       *       *

2. Exclusions

   This insurance does not apply to:

*       *       *

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

\*        \*        \*

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

b. While it is in or on an aircraft, watercraft, or "auto";

c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto".

DE 14, Ex. F. The Harleysville Policy was in effect at the time of Fiore's accident. *Id.*

On July 19, 2012, Insight Companies, Inc., Striker's insurance agent filed a Notice of Occurrence/Claim with Harleysville, notifying them of the accident. *See* DE 14, Ex. G; Defendant's 56.1 Statement ¶ 5. On July 25, 2012, Harleysville sent a letter to Striker acknowledging receipt of the claim. *See* DE 14, Ex. H.

On July 26, 2012, Harleysville sent Striker a disclaimer letter informing Striker that the Harleysville Policy did not cover claims for bodily injury to employees, and stating that the "auto exclusion" applied to the instant situation. *See* DE 14, Ex. I; Defendant's 56.1 Statement ¶ 6. This disclaimer letter was sent to Striker seven days after Harleysville received notice of the accident.

On August 9, 2012, the insurance carrier for Trystate sent a letter to Striker, copying Harleysville, stating that pursuant to the Subcontract, Striker was obligated to defend and indemnify Trystate against any future claims brought by Fiore concerning the accident. *See* DE

15, Ex. H.  On August 28, 2012, Trystate's insurance carrier sent Striker a second demand letter, with a copy sent to Harleysville.  *See id*. Ex. I.

On September 6, 2012, Harleysville sent an email to Striker asking for additional information about that accident, including,

> [1.] Was the truck that was being unloaded owned, leased, rented or loaned to Striker? [2.] If one of the above, please provide the year, make and model of the truck. [3.] Was the truck that was being unloaded a supplier's truck? If so, do you know the name of the supplier? [4.] What is the name of your foreman that was on that job and his/her contact number?

DE 14, Ex. J.  The next day, Striker responded: "Unloading the truck, yes the truck belonged to Striker info enclosed. Henny Spaun was the foreman, however was not present at the time of the accident. Our driver Brian Zeller … handed [Fiore] a hand truck turned his back and [Fiore] was on the ground."  *Id*.  That same day, Harleysville informed Striker that it would "be denying the claim under Striker's GL policy due to an auto exclusion."  *Id*.   On September 17, 2012, Harleysville sent a second disclaimer letter to Striker, disclaiming coverage based on the auto exclusion.  *See* Defendant's 56.1 Statement ¶ 7; DE 14, Ex. K.

## B.  THE PROCEDURAL BACKGROUND

On February 27, 2014, Fiore filed a personal injury action against Westerman Construction Company, Inc., Westerman Construction Management and Consulting, and Eurotech Construction Corp., in the Supreme Court of New York, Nassau County, seeking damages for the injuries he allegedly sustained in the accident on January 10, 2012 (the "Underlying Action").  *See* Defendant's 56.1 Statement ¶ 8; DE 14, Ex. L.  The complaint in the Underlying Action asserted causes of action for negligence and violations of New York Labor Law §§ 200, 240(1) and 241(6).  Defendant's 56.1 Statement ¶ 16.   In August 2014, Westerman Construction Company ("Westerman") filed a third-party complaint against Striker in the Underlying Action alleging

claims of contractual indemnity and common law contribution and indemnity. *See* Defendant's 56.1 Statement ¶ 9; DE 14, Ex. M.

On December 1, 2014, Twin City Fire Insurance Company ("Twin City"), Striker's commercial automobile insurance carrier, agreed to defend Striker in the Underlying Action pursuant to a reservation of rights. *See* Defendant's 56.1 Statement ¶ 10; DE 14, Ex. N. On March 5, 2015, Twin City issued a second reservation of rights letter to Striker, stating in pertinent part, "[o]ur investigation reveals that Mr. Fiore allegedly was injured while moving/carrying a hand truck." *See* Defendant's 56.1 Statement ¶ 11; DE 14, Ex. O.

On December 1, 2015, Striker's counsel sent Harleysville an email, which contained Fiore's verified responses to Westerman's Bill of Particulars. DE 14, Ex. P; DE 15, Exs. S, T.

As mentioned above, on August 29, 2016, Striker filed a declaratory judgment action against Harleysville in the Supreme Court of New York, Nassau County. *See* DE 1. On October 24, 2016, Harleysville removed the instant action to this Court. Four days later, Harleysville filed an answer to the instant complaint. *See* DE 6.

## II. DISCUSSION

### A. STANDARD OF REVIEW

#### 1. FED. R. CIV. P. 56

Pursuant to Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). A dispute is genuine if the "evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

It is the movant's burden to initially demonstrate the absence of material facts that preclude summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005) (citing *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Such a "burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. CocaCola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). If the moving party meets the initial burden, the nonmoving party must present specific facts that demonstrate there is a genuine issue that should be left for the fact-finder to decide. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002); *see also Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (requiring the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts … the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" (internal citations omitted)). Mere conjecture, speculation, or conclusory statements are not enough to defeat summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citations omitted). The "mere existence of a scintilla of evidence" is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252.

In considering a summary judgment motion pursuant to Rule 56, the Court must "view the evidence in the light most favorable to the non-moving party … and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations omitted); *see also Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007) (noting that in deciding a summary

judgment motion, the court will "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all inferences and resolv[e] all ambiguities in favor of the nonmoving party"); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (stating that in deciding a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." (internal citations omitted)).

It is not the Court's responsibility to resolve any purported issues of disputed facts, but merely to "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (internal citations omitted); *accord Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (noting that the responsibility of the district court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial" (quoting *Anderson*, 477 U.S. at 249)). "A genuine issue of fact for trial exists when there is sufficient evidence on which a jury could reasonably find for the plaintiff." *Cioffi*, 444 F.3d at 162 (quoting *Anderson*, 477 U.S. at 252).

### 2. The Plaintiff's Violation of Local Rule 56.1

The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rule(s)") direct parties moving for summary judgment to file a "short and concise statement . . . of the material facts to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). Parties who oppose a motion are similarly directed to respond to each numbered paragraph, and "each statement controverting any statement of

material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Rule 56.1(d).

Fed. R. Civ. P. 56 states that a party who either asserts or disputes a fact must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

Here, the Plaintiff has failed to follow the directives of Local Rule 56.1 and Fed. R. Civ. P. 56(c).  In response to the fourth paragraph of the Defendant's 56.1 Statement, the Plaintiff merely "den[ies]" the relevant fact without citing a single piece of evidence in support of its denial.  DE 11 at 2-3.  In a number of additional responses, the Plaintiff asserts its corrections to a particular fact without a single citation to evidence in support of its assertions.  *See, e.g.*, *id.* at 3-4.

While this Court could ostensibly conduct an exhaustive review of the record, it declines to do so here.  Rule 56 does not require the Court "to perform an independent review of the record to find proof of a factual dispute."  *Amnesty Am.*, 288 F.3d at 470 (citations omitted); *see also Giannullo v. City of New York*, 322 F.3d 139, 145 (2d Cir. 2003) (stating that the purpose of Local Rule 56.1(d) "is to free district courts from the need to hunt through voluminous records without guidance from the parties") (internal citations and alterations omitted).  "Rather, the party opposing the summary judgment motion has the obligation to point to admissible evidence in the record in support of any claim that there is a disputed issue of material fact."  *Arline v. Potter*, 404 F. Supp. 2d 521, 527 (S.D.N.Y. 2005).  The Plaintiff failed to point to admissible evidence to support claims of disputed issues of fact in multiple parts of its response to the Defendant's 56.1 Statement.

Therefore, the Court will deem the Defendant's assertions in paragraphs four as well as eight through ten as admitted by the Plaintiff for the purposes of deciding this motion, because "where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal alterations omitted) (collecting cases); *see also Fiedler v. Incandela*, No. 14CV2572SJFAYS, 2016 WL 7406442, at *6 (E.D.N.Y. Dec. 6, 2016) ("The court need not consider as true any fact that is not supported by admissible evidence." (citing *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 260 (S.D.N.Y. 2014))); *Suares v. Cityscape Tours, Inc.*, No. 11 CIV. 5650 AJN, 2014 WL 969661, at *2 (S.D.N.Y. Mar. 12, 2014), aff'd, 603 F. App'x 16 (2d Cir. 2015) (where the Plaintiff failed to provide any citations to the record, the Court deemed "[e]ach numbered paragraph in the statement of material facts set forth in [the] defendants 56.1 statement admitted for purposes of the motion") (citing Local Rule 56.1) (original alterations omitted); *Hoefer v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown*, No. 10 CIV. 3244 ER, 2013 WL 126238, at *1 n.3 (S.D.N.Y. Jan. 9, 2013) (deeming all of the Defendants' assertions supported by evidence admitted where the Plaintiff failed to cite to admissible evidence); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding the plaintiff's responses to a defendant's Rule 56.1 statement where the plaintiff failed to refer to evidence in the record); *F.T.C. v. Med. Billers Network, Inc.,* 543 F. Supp. 2d 283, 302 (S.D.N.Y. 2008) (disregarding assertions "not accompanied by citation to admissible evidence"); *Arline*, 404 F. Supp. 2d at 527 (deeming all of the defendant's assertions in its 56.1 statement admitted by the Plaintiff for failure to rely on admissible evidence).

Accordingly, those facts are drawn from the Defendant's 56.1 Statement and are deemed admitted where the Defendant's assertions are supported by evidence. *See Baity v. Kralik*, 51 F.

Supp. 3d 414, 421 (S.D.N.Y. 2014) ("[T]he Court has only relied upon uncontroverted paragraphs of Defendants' Rule 56.1 Statement where the record evidence duly supports Defendants' contentions."); *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 508 (S.D.N.Y. 2014) (stating that the Court was "mindful that [t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." (internal citations and quotation marks omitted)); *Berdugo v. City of New York*, No. 03 Civ. 7319, 2004 WL 1900357, at *1 (S.D.N.Y. Aug. 23, 2004) (where plaintiff failed to follow requirements of Local Rule 56.1, deeming defendants' statements of facts admitted, but only to the extent that they were supported by the record).

## B.  DUTY TO INDEMNIFY

Harleysville argues that it has no duty to indemnify Striker because the Harleysville Policy's auto exclusion precludes coverage in the Underlying Action.  Striker responds that the exception does not apply and the Harleysville Policy does apply to the incident.  As explained below, the Court finds that the auto exclusion does prevents coverage.

As a threshold matter, the Court first determines that the Harleysville Policy's auto exclusion is clear and unambiguous.  *See Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (internal citations and quotation marks omitted)).  Under New York State law, "ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *40 Gardenville, LLC v. Travelers Prop. Cas. of America*, 387 F. Supp. 2d 205, 212 (W.D.N.Y. 2005) (citing *Int'l Multifoods Corp. v.*

*Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)); *see also 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (stating that the Court will interpret the provision in light of its "plain and ordinary meaning" if it is unambiguous (internal citations omitted)).

The relevant auto exclusion bars coverage for "'[b]odily injury' … arising out of the ownership, maintenance or use or entrustment to others of any … 'auto' … owned or operated by … any insured. Use includes operation and 'loading and unloading.'" This language is "clear and unambiguous and allows no opportunity for construction as a question of fact[,]" *New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York*, 213 A.D.2d 325, 325, 624 N.Y.S.2d 392 (N.Y. App. Div. 1995), and strikingly similar to other auto exclusions which have been approved in this Circuit. *See, e.g.*, *Nautilus Ins. Co. v. 93 Lounge Inc.*, No. 14-cv-1029, 2017 WL 1207528, at *7 (E.D.N.Y. Mar. 31, 2017) (similar auto exclusion was determined to be unambiguous); *Tudor Ins. Co. v. Golovunin*, No. 07-cv-4792, 2013 WL 5437025, at *6 (E.D.N.Y. Sept. 27, 2013) (same); *U.S. Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500, 505 (W.D.N.Y. 2012) (same).

Given that the auto exception in the Harleysville Policy is clear and unambiguous, the Court must now determine whether the exclusion specifically contemplates the circumstances in this case. The Defendant alleges that, even in the version of the facts most favorable to the Plaintiff, under New York law, the "loading and unloading" portion of the auto exception applies. The Plaintiff counters that regardless of whether Fiore's accident occurred during the "loading and unloading" process, the lack of causation related to the use of a vehicle precludes the use of the auto exception.

To interpret 'loading and unloading' clauses in insurance contracts, New York law subscribes to the 'completed operations' doctrine. *Mohawk Val. Fuel Co. v. Home Indem. Co.*, 8

Misc. 2d 445, 448, 165 N.Y.S.2d 357 (N.Y. Sup. Ct. 1957). This doctrine "not only [covers] the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered." *Wagman v. Am. Fid. & Cas. Co.*, 304 N.Y. 490, 494, 109 N.E. 592 (N.Y. 1952); *Broome Cty. Co-op. Fire Ins. Co. v. Aetna Life & Cas. Co.*, 75 Misc. 2d 587, 590, 347 N.Y.S.2d 778 (NY Sup. Ct. 1973) ("[A]n unloading operation is not completed until the 'goods' to be delivered have reached their ultimate destination." (internal citations omitted)). Even an "employee's return to the truck with his empty dolly for the purposes of further unloading and delivering" may be covered under the doctrine. *Hertz. Corp. v. Bellin*, 28 A.D.2d 1101, 1101, 28 N.Y.S.2d 140 (N.Y. App. Div. 1967) (internal citations omitted), *aff'd*, 22 N.Y.2d 736, 239 N.E.2d 211 (N.Y. 1968).

Harleysville "bears the burden of showing that an exclusion applies to exempt it from covering a claim." *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011). Because this is a general liability insurance policy rather than an automobile insurance policy, exclusions are subject to a narrow interpretation. *Finch v. Steve Cardell Agency*, 136 A.D.3d 1198, 1202, 25 N.Y.S.3d 441 (N.Y. App. Div. 2016).

In the instant case, there are two versions of events that allegedly caused injury to Fiore. In one version, told by two witnesses, reported in a medical form containing Fiore's signature, and stated in an OSHA document, Fiore was injured as the hand truck was being removed from Striker's truck. *See, e.g.*, DE 14, Ex. C, Ex. D 45:8-46:4, Ex. E 50:8-51:13; DE 15, Ex. B. In another version, told by Fiore during his deposition in the Underlying Action, Fiore was injured while travelling up a ramp with the hand truck after loading the HVAC units onto the hand truck. *See* Defendant's 56.1 Statement ¶ 4.

Regardless of the version accepted by the Court for the purposes of adjudicating the instant motions, it is undisputed that Fiore was in the process of removing HVAC ductwork from the Striker truck and delivering it to the Construction Site when he sustained his alleged injuries. Therefore, there is no dispute that the incident occurred during the loading or unloading period, as contemplated by New York State law when examining either party's summary judgment motion.

The Plaintiff's main contention, both in opposition to the Defendant's summary judgment motion, and in support of its own, is that while the injury occurred during the unloading process, it occurred from a condition unrelated to the process of unloading the HVAC units. For the reasons stated below, the Court disagrees with this contention. When an incident occurs during the loading or unloading process, the existence of coverage under the relevant provision of the policy is flexible and does not require the defendant to show that the vehicle itself caused the injury. *See, e.g.*, *Eagle Ins. Co. v. Butts*, 269 A.D.2d 558, 559, 707 N.Y.S.2d 115 (N.Y. App. Div. 2000) (collecting New York State law cases).

However, it is not sufficient to merely demonstrate that the incident occurred during the loading or unloading period. The defendant must demonstrate that the accident resulted from "some act or omission related to the use of the vehicle." *Id.*; *see also Elite Ambulette Corp. v. All City Ins. Co.*, 293 A.D.2d 643, 644–645, 740 N.Y.S.2d 442 (N.Y. App. Div. 2002) (upholding the trial court ruling that the auto insurance company was not obligated to defend or indemnify because "the accident was not the result of an act or omission related to the use of the vehicle"). Put another way, "it is settled that where an accident results from an act inherent in or directly related to the process of the moving of the goods from the vehicle to the place to which they are to be delivered, then there is coverage." *Cosmopolitan Mut. Ins. Co. v. Baltimore and Ohio R.R. Co.*, 18 A.D.2d 460, 462, 240 N.Y.S.2d 88 (N.Y. App. Div. 1963) (internal citations omitted).

The factual discrepancies between the two versions of the incident are immaterial for the instant summary judgment motions. To adjudicate the Plaintiff's summary judgment motion, the Court uses Harleysville's version of the incident, viewed in the light most favorable to the Defendant. *See* DE 14, Ex. C, Ex. D 45:8-46:4, Ex. E 50:8-51:13; DE 15, Ex. B. This set of facts unquestionably falls within the realm of the auto exception under New York State law. An injury that occurs while removing a hand truck from Striker's truck is not only during the course of the loading or unloading period, but also is a direct result from "some act or omission related to the use of the vehicle." *Eagle Ins. Co.*, 269 A.D.2d at 559. Under New York law, this set of facts falls under the auto exception and is not covered by a general liability policy. Striker is not entitled to indemnification under the Harleysville Policy when applying the facts in a light most favorable to Harleysville.

For the purposes of adjudicating the Defendant's summary judgment motion, the Court is required to view the facts in a light most favorable to Striker. Therefore, the Court will use Striker's version of the incident, viewed in the light most favorable to Striker, and accept that Fiore was injured on the ramp in the course of carrying the HVAC ductwork to the Construction Site. As mentioned previously, this indubitably occurred during the loading and unloading period as Fiore was injured prior to the ultimate delivery of the goods. Further, Fiore allegedly was in the process of pushing a hand cart up a ramp at the Construction Site in the course of making the delivery.

In that process, he claims he tripped on a piece of wood at an active construction site, which, according to his deposition, caused him to sustain his injuries. This injury was not caused by a defect in a public sidewalk or street, where such accident could happen to anyone; s*ee Cosmopolitan Mut. Ins. Co.*, 18 A.D.2d at 462, it occurred in a construction zone and was allegedly

the result of tripping over construction materials while operating construction equipment. Thus, the Court finds that there was a direct causal connection between the incident and the unloading of Striker's truck. *See, e.g.*, *Cont'l Cas. Co. v. Duffy*, 26 A.D.2d 630, 631, 272 N.Y.S.2d 470 (N.Y. App. Div. 1966); *Bundschu v. Travelers Ins. Co.*, 22 A.D.2d 907, 907, 255 N.Y.S.2d 529 (N.Y. App. Div. 1964).

Using Striker's version of the incident, viewed in a light most reasonable to Striker, the Court finds that the auto exception to the Harleysville Policy is applicable. Striker is not entitled to indemnification under this set of facts.

## C. DUTY TO DEFEND

Having found that the auto exception applies regardless of which factual version is applied, the Court must then proceed to examine whether Harleysville nevertheless has a duty to defend Striker in the Underlying Action. Striker argues that even if Harleysville has no duty to indemnify, it is required to defend Striker in the Underlying Action. Harleysville contends that no duty to defend exists in the instant case.

Under New York law, "[t]he duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer has actual knowledge of facts establishing a reasonable possibility of coverage." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 690 N.E.2d 866 (N.Y. 1997) (internal citations and quotation marks omitted); *accord Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443, 779 N.E.2d 167 (N.Y. 2002). "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82-83 (2d Cir. 2013) (quoting *Town of Massena*, 98 N.Y.2d at 443). This makes an insurer's duty to

defend considerably broader than its duty to indemnify. *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002); *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714, 871 N.E.2d 1128 (N.Y. 2007); *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 850 N.E.2d 1152 (N.Y. 2006); *Cont'l. Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648, 609 N.E.2d 506 (N.Y. 1993).

Typically, "[t]he duty to defend … is derived from the allegations of the complaint and the terms of the policy. If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73, 542 N.E.2d 1048 (N.Y. 1989). "An insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (internal citations omitted); *accord Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 64, 575 N.E.2d 90 (N.Y. 1991) ("It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim *may be* meritless or not covered." (emphasis added)). To be absolved of the duty to defend, an insurer must establish that "there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors, Inc.*, 690 N.E.2d at 868-69.

However, the allegations contained in the complaint are not the sole consideration. *See Fitzpatrick*, 78 N.Y.2d at 63. The scope of the coverage purchased in an insurance policy limits an insurer's obligation to defend the insured. *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45, 574 N.E.2d 1035 (N.Y. 1991). An insurer is not obligated to defend against a claim if there are no

factual or legal circumstances that might trigger the duty to indemnify. *Zuk*, 78 N.Y.2d at 45; *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 74, 332 N.E.2d 319 (N.Y. 1975) ("The insurer's duty to defend is … not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy."). Moreover, if an insurer discovers during the course of litigation that the claim or claims are outside the relevant indemnification agreement, it may withdraw from the defense. *Charles F. Evans, Inc. v. Zurich Ins. Co.*, 95 N.Y.2d 779, 780, 731 N.E.2d 1109 (2000) (internal citations omitted).

In the instant case, it is undisputed that in the Underlying Action, Fiore's complaint makes no mention that he was in the process of delivering HVAC ductwork when he was injured. The complaint also fails to plead much of the specific factual details concerning the incident that are undisputed in this action. *See* DE 14, Ex. L. In fact, it is largely devoid of any of the specific factual circumstances surrounding the incident. *See, id*. While this may be the work of inartful pleading, the Court is confined to address the allegations of the complaint, "not what the objective state of reality is." *City of New York v. Liberty Mut. Ins. Co.*, No. 15-cv-8220, 2017 WL 4386363, at *7 (S.D.N.Y. Sept. 28, 2017). According to the Plaintiff, the failure of Fiore's allegations to mention the factual circumstances surrounding the auto exclusion preclude the Defendant from shirking its duty do defend.

The existence of extrinsic evidence which excluded the possibility that Striker was covered by the Harleysville Policy releases Harleysville of its duty to defend in the Underlying Action. *See, e.g.*, *Zuk*, 78 N.Y.2d at 45 (holding that the insurer is entitled to summary judgment "if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision"). New York State law recognizes a narrow exception to the duty to defend, which permits a disclaimer of defense

18

prior to litigation or a withdrawal during the course of litigation, if extrinsic evidence to the complaint or insurance policy is "unrelated to the merits of the plaintiff's action [and] plainly take[s] the case outside the policy coverage." Allan Windt, *Insurance Claims and Disputes* § 4:4 at pp. 293-94; *see, e.g.*, *Town of Moreau v. Orkin Exterminating Co.*, 165 A.D.2d 415, 568 N.Y.S.2d 466 (N.Y. App. Div. 1991). The insurer is only relieved of the duty to defend "where the [extrinsic] evidence offered … allow[s] a court to eliminate the possibility that the insured's conduct falls within the coverage of the policy." *IBM, Corp.*, 363 F.3d at 148 (internal quotation marks and alterations omitted); *In re Transtate Ins. Co.*, 303 A.D.2d 516, 516, 756 N.Y.S.2d 441 (N.Y. App. Div. 2003) ("It is well settled that an insurance carrier can be relieved of its duty to defend if it establishes, as a matter of law, that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision." (internal citations omitted)). While the Second Circuit has acknowledged that the precise delineations of the use of extrinsic evidence to prevent an insurer from exercising its duty to defend are unclear under New York law, it has recognized that extrinsic evidence may be used to abandon the duty in certain situations. *See City of New York*, 2017 WL 4386363, at *12.

Here, the Defendant has already established that the auto exception to the Harleysville Policy is applicable to the claims in the Underlying Action. *See* Section II.B.; *see also Mark McNicol Enters. v. First Fin. Ins. Co.*, 284 A.D.2d 964, 965, 726 N.Y.S.2d 282 (N.Y. App. Div. 2001). It is important that the Court uses the policy contract itself to determine the duty to defend, rather than solely examine a complaint drafted by a non-party. Neither party's contractual rights should depend exclusively on a non-party's pleading. This is especially true in New York state, with its liberal pleading regime where "[a] party may amend his pleadings once without leave of

19

court within twenty days after its service, or at any time before the period for responding to it expires, or within twenty days after service of a pleading responding to it." N.Y. C.P.L.R. § 3025.

Although not specifically mentioned in the Underlying Action's complaint, Fiore's claims arise out of the exact same factual circumstances that this Court has already deemed to be covered under the auto exception. It has never been disputed that Fiore's injury occurred during the unloading process. Further, as this Court established in Section II.B., there is no genuine dispute that the alleged injury was caused by the delivery of the goods. Without such a dispute, there is no possible legal or factual basis in which the Harleysville Policy applies. *See Employers Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, No. 15-CV-4175, 2016 WL 815277, at *11 (S.D.N.Y. Feb. 29, 2016), *appeal withdrawn* (May 11, 2016). These claims thus fall within the same exclusion under the Harleysville Policy and thus, Harleysville has no duty to defend Striker in the Underlying Action. *Parler v. North Sea Ins. Co.*, 129 A.D.3d 926, 928, 11 N.Y.S.3d 659 (N.Y. App. Div. 2015).

In addition, Harleysville had knowledge of facts through extrinsic evidence that the claim was definitively excluded from the policy's coverage. This extrinsic evidence included information that was intrinsic to the Underlying action as well as information that Harleysville learned prior to its initiation. Importantly, the issues and extrinsic evidence present are wholly irrelevant to the principal merits of the Underlying Action, as required by the Second Circuit to disclaim the duty. *See City of New York*, 2017 WL 4386363, at *13 ("[T]he extrinsic evidence the Defendant has presented goes to an issue relevant to the merits of the underlying complaints. Under clearly established New York law, then, such evidence cannot justify Liberty's refusal to defend or provide a basis, in a collateral proceeding, for a declaration terminating that duty.").

On September 7, 2012, approximately one and a half years prior to the filing of the Underlying Action, Harleysville received an email *from Striker* that informed Harleysville that Fiore was injured during the unloading process involving a Striker-owned truck. *See* DE 14, Ex. J. Cathi Houlihan, a manager at Striker who is listed as the contact on the General Liability Notice of Occurrence/Claim form, *see* DE 14, Ex. G, and is the recipient of Harleysville's disclaimer notices, *see* DE 14, Exs. I, K, is the source of this piece of extrinsic evidence. Houlihan's email was sent to a Legal Principles Claim Specialist at Harleysville in response to a series of questions about the incident. Striker's response to Harleysville's investigative inquiry occurred nine months after the accident, which constitutes a sufficient time for Striker to have conducted its own investigation and determine these relatively simple factual circumstances.

This is not a case where the "underlying facts made known to the insurer create a reasonable possibility that the insured may be held liable for some act or omission covered by the policy." *Fitzpatrick*, 78 N.Y.2d at 70 (internal citations and quotations omitted). This extrinsic evidence, *from the insured*, conclusively establishes that "no possible factual or legal basis on which [Harleysville] might eventually be obligated to indemnify its insured under any policy provision," *Zuk*, 78 N.Y.2d at 45, over a year before the initiation of the Underlying Action. *See Cook*, 7 N.Y.3d at 137 ("When an insurer seeks to disclaim coverage on the further basis of an exclusion, as it does here, the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." (internal citations and quotations omitted)).

Additional documents extrinsic to the complaint and the policy document reinforce this position. On March 5, 2015, Striker's auto carrier issued a reservation of rights letter to Striker

and advised it that its "investigation reveals that Mr. Fiore allegedly was injured while moving/carrying a hand truck." DE 14, Ex. O. Fiore's deposition testimony, as detailed in Section I.A.1., also reinforces this position. As mentioned previously, Fiore testified that, in the course of delivering materials to the Construction Site, he removed a hand truck from a Striker-owned truck, and helped load the hand truck with the ductwork. Defendant's 56.1 Statement ¶ 4. With the hand truck filled with ductwork, Fiore maneuvered the hand truck to a ramp, and in the process of moving the hand truck up the ramp, Fiore tripped on "construction debris" and fell. *Id*. This deposition testimony unmistakably establishes that the auto exception applies.

Accordingly, as all of the alleged liability is within the scope of the auto exclusion, and there is no "reasonable possibility" of coverage, *BP Air Conditioning Corp.*, 8 N.Y.3d at 714, Harleysville had no duty to defend Striker in the Underlying Action.

**D. BAD FAITH & NEW YORK INSURANCE LAW § 3420 CLAIMS**

The Defendant asserts that the Plaintiff's failure to address its arguments in its summary judgment motion regarding (1) bad faith denial of insurance coverage; and (2) New York Insurance Law § 3420 constitutes a waiver.

In the Second Circuit, a party that fails to raise an argument in its opposition papers in a motion for summary judgment has waived that argument. *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) (summary order) ("[P]laintiff never raised these arguments in its opposition to defendants' motion for summary judgment. Accordingly, these arguments were waived."); *Aiello v. Stamford Hosp.*, 487 F. App'x 677, 678 (2d Cir. 2012) (summary order) ("The premise of our adversarial system is that courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argument by the parties before them." (internal citations omitted)); *Palmieri v. Lynch*, 392 F.3d

73, 87 (2d Cir. 2004) ("[The plaintiff] failed to … raise this argument in his opposition to summary judgment. Thus, this argument has been waived."); *NML Capital, Ltd. v. Republic of Argentina*, No. 05-cv-2434, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (holding that the plaintiffs were entitled to summary judgment on an issue because the defendant waived the argument by failing to raise it in its opposition to the plaintiffs' summary judgment motion).

In the instant case, the Defendant addresses both the bad faith and New York Insurance Law § 3420 claims in its memorandum in support of its summary judgment motion. *See* DE 13-1 at 18-21. Regarding the bad faith claim, Harleysville argues that Striker's claim is duplicative of its breach of contract claim. As New York law does not recognize an independent cause of action for bad faith insurance coverage, the Defendant claims that it is entitled to summary judgment as to the bad faith claim. *See id.* at 18-19. Harleysville's contention as to New York Insurance Law § 3420 is that its disclaimer letter was timely as a matter of law. *See id.* at 19-21. The Court notes that the Plaintiff failed to address either argument at any point in its summary judgment opposition briefing. *See* DE 15-1; DE 19. Thus, these arguments have been waived by the Plaintiff and the Defendant is entitled to summary judgment on both claims.

## III. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment pursuant to Rule 56 dismissing all of the Plaintiff's claims is granted, and the Plaintiff's motion for summary judgment is denied. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED**:

Dated: Central Islip, New York

January 31, 2018

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge